IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANDY CARL HINKLEY | : | CIVIL ACTION |
| | : | |
| v. | : | No. 11-909 |
| | : | |
| LEHIGH COUNTY, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                                                                 **October 15, 2012**

      Petitioner Randy Carl Hinkley has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. United States Magistrate Judge Linda K. Caracappa has issued a Report and Recommendation (R&R) recommending the petition be dismissed because the claims raised therein are procedurally defaulted. Upon consideration of the R&R and Hinkley's objections thereto, and for the reasons set forth below, this Court agrees Hinkley's habeas petition should be dismissed.

**FACTS**[1]

      In his habeas petition, Hinkley seeks relief from three related state court sentences imposed by different judges in the Lehigh County Court of Common Pleas in Case Nos. 2967/1990, 1689/1992, and 1209/2004. The background to Hinkley's claims is as follows:

      On April 29,1992, Hinkley pleaded guilty to misdemeanor charges of criminal mischief and defiant trespass in Case No. 2967/1990 and was sentenced to a one-year term of probation. Later the same year, Hinkley was arrested on new charges in Lehigh County. While the Lehigh County charges were pending, Hinkley pleaded guilty to a felony burglary charge in Case No. 1228/1992 in Northampton County and was sentenced to a term of imprisonment of 23 months to five years.

---

[1] The following factual summary is based on the portions of the record submitted by the parties and on the trial and appellate court dockets in Hinkley's underlying criminal cases, available on the Pennsylvania Judiciary Web Portal, http://ujsportal.pacourts.us/Default.aspx#.

Hinkley was thereafter returned to Lehigh County, where on January 13, 1993, he pleaded guilty to recklessly endangering another person and simple assault in Case No. 1689/1992 and was sentenced to a term of imprisonment of time served (approximately seven months) to two years less one day, to run concurrently with the sentence imposed in Case No. 2967/1990.[2]  The following day, Hinkley's probation was revoked in Case No. 2967/1990, and he was sentenced to a new 23-month term of probation.  On January 15, 1993, Hinkley was granted immediate parole in Case No. 1689/1992 and was apparently released, notwithstanding his outstanding incarceration sentence in the Northampton County case.

The status of Hinkley's criminal cases during the decade following his January 1993 release is not entirely clear from the record.  Petitions for probation and/or parole violations appear to have been filed in Case Nos. 2967/1990 and 1689/1992 in August 1993, but Hinkley was not taken into custody until April 1995, at which time he was released on bail.  A bench warrant was issued on May 10, 1995.  Hinkley was again taken into custody on June 6, 1995, but was released the following day.  Although a new bench warrant was issued, Hinkley remained at large, his whereabouts unknown, until he was again apprehended eight years later in October 2003.  On November 18, 2003, Hinkley's probation was again revoked in Case No. 2967/1990, and he was again sentenced to a new 23-month term of probation.  On December 1, 2003, Hinkley's parole was revoked in Case No. 1689/1992, and he was sentenced to serve the balance of his original sentence in that case (approximately 17 months) and granted immediate work release.

In February 2004, Hinkley left work release and was thereafter charged with escape in Case

---

[2] Hinkley's original sentence in Case No. 1689/1992 was time served to two years; however, the day after imposing sentence, the court amended the sentence to time served to two years less one day.

2

No. 1209/2004. While the escape charge was pending, Hinkley was returned to the Lehigh County Prison where he continued to serve the balance of his sentence in Case No. 1689/1992 until that sentence expired on May 18, 2005. On January 24, 2005, Hinkley pleaded guilty to the escape charge in Case No. 1209/2004, and on March 4, 2005, he was sentenced to two and a half to six years of imprisonment, to run consecutively to all other sentences. On May 3, 2005, Hinkley's probation was again revoked in Case No. 2967/1990, and he was sentenced to one to two years of imprisonment, to run consecutively to the sentence imposed in Case No. 1209/2004, with credit for all time spent in custody as a result of the criminal charges for which sentence was being imposed. On May 6, 2005, the Northampton County Court of Common Pleas issued an order stating that Hinkley's sentence in Case No. 1228/1992 was terminated. The reasons for the order are not clear from the record.

Following imposition of sentence in each of the three Lehigh County cases, Hinkley filed numerous appeals, PCRA petitions, and other requests for relief, all of which were unsuccessful. In February 2011, he filed the instant habeas petition. Hinkley appears to allege his confinement from 2003 forward on probation and parole violations in Case Nos. 2967/1990 and 1689/1992, and on the escape charge in Case No. 1209/2004, violates his substantive and procedural due process rights. Hinkley contends because of his previously-imposed incarceration sentence in Northampton County Case No. 1228/1992, Lehigh County had no authority to release him on parole in January 1993. Hinkley further argues because his January 1993 release was void, his sentences in Case Nos. 2967/1990 and 1689/1992 continued to run while he was erroneously at liberty, with the result that those sentences expired in June 1994, making his later violation sentences in those cases, as well as his escape conviction in Case No. 1209/2004, unlawful. Hinkley also argues he is entitled to time

3

credit toward his one-to-two-year probation revocation sentence in Case No. 2967/1990 for time spent serving his parole revocation sentence in Case No. 1689/1992 from November 18, 2003, to May 18, 2005, when his sentence on Case No. 1689/1992 expired. Finally, Hinkley appears to bring an ineffective assistance of counsel claim based on the alleged "complicity" of all counsel in the alleged violations of his due process rights.

**DISCUSSION**

Respondents argue Hinkley's habeas petition should be denied because it is untimely, the claims raised therein are procedurally defaulted, and his claim he is entitled to time credit toward his sentence in Case No. 2967/1990 for the period from November 18, 2003, to May 18, 2005, fails on the merits. Although the Magistrate Judge found it unnecessary to address Respondents' statute of limitations argument, this Court agrees Hinkley's habeas petition is time-barred insofar as it challenges the judgment in Case Nos. 2967/1990 and 1689/1992.

A federal habeas petition by a prisoner in state custody is subject to a one-year statute of limitations, which runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," unless an alternative start date applies. 28 U.S.C. § 2244(d)(1)(A).[3] This one-year limitations period is subject to statutory and

---

[3] Section 2244(d)(1) provides for three alternative start dates:

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

equitable tolling. The limitations period is statutorily tolled during "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The limitations period may also be equitably tolled if the petitioner shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Because Hinkley's habeas petition challenges the judgment in three different criminal cases, the statute of limitations must be assessed separately with respect to each case. *See Retic v. United States*, 321 F. App'x 865, 865-66 (11th Cir. 2009) (affirming district court's determination that two state judgments challenged in a single habeas application each had their own separate statute of limitations); *Williams v. Smith*, No. 11-578, 2012 WL 3985609, at *2-4 (E.D. Va. Sept. 11, 2012) (analyzing statute of limitations separately as to claims challenging petitioner's original conviction

---

28 U.S.C. § 2244(d)(1)(B)–(D). None of these alternative start dates is applicable here. In his objections to the R&R, Hinkley suggests the alternative start date set forth in § 2244(d)(1)(B) applies because the Lehigh County Clerk of Court thwarted his efforts to file state habeas petitions in 2011. Pet'r's Extended Objections 5-6, ECF No. 39 at 5-6. These allegations are irrelevant to the timeliness of the instant federal habeas petition, however, as Hinkley does not allege the Clerk in any way prevented him from filing this action. Nor could he, for, as set forth below, the federal statute of limitations had expired no later than February 2009, approximately two years before the Clerk allegedly created an impediment to Hinkley's state court filings. In addition, this case does not involve any newly recognized constitutional right, *see* § 2244(d)(1)(C), and Hinkley has not shown the running of the statute of limitations should be delayed because the factual predicate of his claims was unknown to him, *see* § 2244(d)(1)(D). Hinkley does not contend he was unaware his reincarceration and subsequent prosecution on parole and probation violations in 2003 was unlawful, and he was clearly aware of the time credit issue concerning his one-to-two-year probation revocation sentence, having raised the issue in his brief on direct appeal from that sentence. *See* Resp'ts' Opp'n Ex. 2 at 7, ECF No. 28-2 at 8 (arguing running sentence in Case No. 2967/1990 consecutively to sentence in Case No. 1689/1992 contravened plea bargain). Hinkley was also alerted to the time credit issue based on a November 2005 Department of Corrections "Sentence Status Summary," which does not show any commitment credit toward Case No. 2967/1990 after November 18, 2003. *See* Pet'r's Objections Ex 2, ECF No. 38 at 7.

and claims challenging revocation proceedings); *Supples v. Kerestes*, No. 08-1275, 2010 WL 324431, at *7-9 (W.D. Pa. Jan. 21, 2010) (analyzing statute of limitations separately as to each underlying criminal conviction in habeas case raising time credit issues).

With respect to Case No. 2967/1990, Hinkley appealed his May 3, 2005, probation revocation sentence to the Superior Court, which denied the appeal on May 16, 2007. Hinkley did not seek further review in the Pennsylvania Supreme Court; therefore, his sentence in Case No. 2967/1990 became final when the time to seek such review expired on June 15, 2007. *See* Pa. R. App. P. 1113(a) (providing a petition for allowance of appeal from a final order of the Superior Court shall be filed within 30 days after entry of the order); *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009) (holding a conviction does not become final for purposes of § 2244(d)(1)(A) "until the 'availability of direct appeal to the state courts' and to [the United States Supreme Court] has been exhausted" (citations omitted)).

Hinkley filed a PCRA petition 103 days later, on September 26, 2007, with 262 days remaining in the federal limitations period. The petition was denied on November 20, 2007. Hinkley did not appeal but filed a pro se state habeas petition in the Court of Common Pleas on November 25, 2007, which was denied on December 6, 2007. Thus, assuming Hinkley is entitled to statutory tolling during the pendency of these petitions,[4] the federal limitations period would have begun to run again when the time to appeal the denial of Hinkley's state habeas petition expired on

---

[4] It is not clear whether Hinkley would in fact be entitled to statutory tolling during this period, as his initial PCRA petition appears to have been denied as untimely and thus would not qualify as "properly filed" for purposes of § 2244(d)(2). *See* Pet'r's Extended Objections Ex. 2, ECF No. 39 at 10 (noting, in denying Hinkley's later-filed mandamus petition, that Hinkley's PCRA petition was denied as untimely in November 2007); *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (holding a PCRA petition rejected by the state courts as untimely is not "properly filed," and thus does not statutorily toll the federal habeas statute of limitations under § 2244(d)(2)).

6

January 5, 2008.  *See* Pa. R. App. P. 903(a) (stating general rule that notice of appeal shall be filed within 30 days after entry of the order from which the appeal is taken); *Swartz v. Meyers*, 204 F.3d 417, 424 (3d Cir. 2000) (holding an application for post-conviction relief remains pending during "the time during which an appeal could be filed even if the appeal is not eventually filed").  The federal limitations period would have continued to run for at least an additional 117 days until May 1, 2008, when Hinkley filed a further PCRA petition with 145 days remaining in the federal limitations period.  The court denied Hinkley's May 2008 PCRA petition on June 19, 2008.  Hinkley again did not appeal but filed a motion for relief regarding PCRA denials on July 1, 2008, which was denied on August 14, 2008.  Assuming Hinkley is entitled to statutory tolling during the pendency of his May 2008 PCRA petition and motion for relief, the federal limitations period would have begun to run again when the time to appeal the denial of Hinkley's motion for relief expired on September 13, 2008.

      The docket in Case No. 2967/1990 does not reflect any further filings by Hinkley between September 13, 2008, and March 7, 2009; therefore, the federal limitations period would have continued to run during this 175-day period, expiring in February 2009.  Hinkley continued to seek relief in state court after February 2009, filing a mandamus petition on March 7, 2009, a motion to invoke the state's inherent authority on April 25, 2009, and two state habeas petitions on June 3, 2009, and July 19, 2009, all of which were denied.  Hinkley also filed a mandamus action in the Commonwealth Court on March 17, 2010, and additional requests for relief in the Court of Common Pleas in May 2010 and thereafter.  Because the federal limitations period had lapsed in February 2009, however, none of these filings could toll the limitations period.

      Giving Hinkley the benefit of every possible basis for statutory tolling, the one-year

7

limitations period for his federal habeas petition would have expired in February 2009, almost two years before he filed the instant petition in February 2011. While the federal limitations period is also subject to equitable tolling, Hinkley has not established a basis for equitable tolling here. In his objections to the R&R, Hinkley argues equitable tolling is warranted because (1) he "has been actively misled by Respondents," (2) "he has in some extraordinary way been prevented from asserting his rights," and (3) "he has timely asserted his rights mistakenly in the wrong forum." Pet'r's Objections at 4, ECF No. 38. While these circumstances, if established, may support equitable tolling, *see Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999), Hinkley has provided no explanation as to how any of these circumstances apply in this case. Hinkley does not explain how Respondents misled him with respect to the filing of a federal habeas petition or prevented him in any way from asserting his rights in federal court. Moreover, although the record reflects that Hinkley actively pursued various avenues of post-conviction relief in the Court of Common Pleas after the Superior Court denied his direct appeal in Case No. 2967/1990, there is nothing to suggest he intended to file a federal habeas petition or believed he was doing so by way of his state court filings. *See Burke v. SCI Mahanoy*, No. 10-4572, 2011 WL 3510930, at *8 (E.D. Pa. Apr. 28, 2011) (holding petitioner's "history of filing multiple *pro se* PCRA petitions in the Pennsylvania state courts show[ed] that no state created impediment or 'extraordinary circumstance stood in his way' to seeking federal relief"), *report and recommendation adopted*, 2011 WL 3495991 (E.D. Pa. Aug. 10, 2011); *Scott v. Ricci*, No. 07-2189, 2008 WL 2684376, at *5 (D.N.J. June 30, 2008) (holding petitioner had not shown equitable tolling was warranted on the ground he had timely asserted his rights in the wrong forum where petitioner "presented no evidence that he mistakenly filed petitions

for post-conviction relief in state court believing he was pursuing a federal habeas claim").[5] Because Hinkley has not shown he is entitled to equitable tolling, his habeas petition is time barred insofar as it challenges the judgment in Case No. 2967/1990.

As to Case No. 1689/1992, the court revoked Hinkley's parole and ordered him to serve the approximately 17-month balance of his sentence on December 1, 2003. Hinkley did not appeal the court's revocation and recommitment order, and the judgment in Case No. 1689/1992 therefore became final when the time to appeal expired on December 31, 2003. Hinkley also did not file a PCRA petition or seek any other form of post-conviction relief in the year following his recommitment, nor has he established a basis for equitable tolling during this period. As a result, the one-year federal limitations period continued to run once his judgment became final and lapsed a year later on December 31, 2004. Although Hinkley eventually filed a PCRA petition on February 28, 2007, this petition—which was not filed until almost two years after Hinkley finished serving his parole revocation sentence in its entirety on May 18, 2005, and which was ultimately dismissed as untimely—could not revive the federal limitations period, which had expired more than two years earlier. As set forth above, Hinkley also has not established a basis for equitable tolling. Accordingly, Hinkley's habeas petition is also time barred insofar as it challenges the judgment in

---

[5] In his habeas petition, Hinkley also alludes to the state courts' misapplication of the law, "fraud & void exceptions, government interference, new facts, counsel abandonment, altering of documents, [and] indigency" as possible bases for tolling, § 2254 Pet. ¶ 18, ECF No. 6, but he provides no explanation as to how most of these factors support tolling in this case. *See Holland*, 130 S. Ct. at 2562 (holding burden is on petitioner to show entitlement to equitable tolling). Hinkley does allege he was abandoned by his counsel on direct appeal in Case No. 2967/1990; however, the record does not reflect counsel's abandonment prevented Hinkley from pursuing his appeal or any of his subsequent post-conviction filings. Rather, the record suggests Hinkley requested and was granted leave to proceed pro se on appeal after a hearing at which the trial court found his waiver was intelligent, knowing, and voluntary.

Case No. 1689/1992.

In Case No. 1209/2004, Hinkley pleaded guilty to the escape charge on January 24, 2005, and was sentenced on March 4, 2005. Hinkley thereafter appealed to the Superior Court, but ultimately discontinued his appeal on January 18, 2007, at which point the judgment in the case became final. *See Myers v. Warden of SCI–Albion*, No. 08-200, 2010 WL 1838178, at *7 (M.D. Pa. May 6, 2010) (holding a petitioner's judgment of sentence became final on the date the Superior Court granted his request to discontinue his direct appeal). Hinkley promptly filed a PCRA petition 41 days later on February 28, 2007, with 324 days remaining in the federal limitations period. On January 10, 2008, Hinkley's PCRA petition was denied. Hinkley appealed the denial to the Superior Court, but he again discontinued his appeal on August 10, 2009. On March 17, 2010, with 105 days remaining in the federal limitations period, Hinkley initiated a mandamus action in the Commonwealth Court, seeking to compel the Department of Corrections (1) to award him credit toward his sentences in Case Nos. 2967/1990 and 1689/1992 for time he was "erroneously at liberty" following his release on parole on January 15, 1993, and (2) to award him concurrent credit toward his sentence in Case No. 2967/1990 for periods when he was detained for probation violations from November 18, 2003, to February 6, 2004, and from March 25, 2004, to May 3, 2005. The Commonwealth Court dismissed Hinkley's mandamus action on January 6, 2011, and Hinkley filed the instant federal habeas petition approximately one month later on February 4, 2011.[6]

As Respondents acknowledge, if Hinkley's mandamus action qualifies as a "properly filed

---

[6] While his mandamus action was pending in the Commonwealth Court, Hinkley continued to seek relief in the Court of Common Pleas, filing a motion for modification nunc pro tunc on April 22, 2010, which the court treated as a PCRA petition and dismissed on June 16, 2010. Because the court dismissed this motion as untimely, it was not properly filed, and Hinkley would not have been entitled to statutory tolling during its pendency.

application for State post-conviction or other collateral review" that tolls the federal limitations period, his federal habeas petition is timely insofar as it challenges the judgment in Case No. 1209/2004. Respondents argue the mandamus action should not be regarded as properly filed because it was untimely in light of the fact the time credit claims raised therein date back to Hinkley's probation revocation proceedings in Case No. 2967/1990 on May 3, 2005. Whether the mandamus action was properly filed for purposes of § 2244(d)(2) depends on the applicable state law governing the filing of such actions. *See Merritt v. Blaine*, 326 F.3d 157, 163 (3d Cir. 2003) ("When determining if a state petition is 'properly filed,' [the court] must focus on the 'state law governing when a petition for relief is properly filed.'" (citation omitted)). Respondents do not cite any applicable state law governing the timing of a mandamus action to compel the Department of Corrections to apply credit for time served, and the Commonwealth Court, while rejecting Hinkley's petition on the merits, did not find the action was time barred. Even assuming the mandamus action statutorily tolled the federal limitations period, rendering the instant federal habeas petition timely as to Case No. 1209/2004, however, the petition must nevertheless be dismissed because the claims pertaining to Case No. 1209/2004 are procedurally defaulted.

Prior to seeking federal habeas relief, a petitioner must first exhaust the remedies available in state court by fairly presenting "both the factual and legal substance of his claims in the state court's highest tribunal." *Rolan v. Coleman*, 680 F.3d 311, 317 (3d Cir. 2012). "Procedural default occurs when a claim has not been fairly presented to the state courts (i.e., is unexhausted) and there are no additional state remedies available to pursue, or, when an issue is properly asserted in the state system but not addressed on the merits because of an independent and adequate state procedural rule." *Id.* (citations omitted). Where a claim is procedurally defaulted, a federal court may not

11

consider the merits of the claim unless the petitioner "makes the standard showing of 'cause and prejudice' or establishes a fundamental miscarriage of justice." *Whitney v. Horn*, 280 F.3d 240, 252-53 (3d Cir. 2002) (quoting *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)).

It is not clear whether Hinkley presented the claims raised in the instant federal habeas petition to the Superior Court either on direct appeal or on appeal from the denial of his PCRA petition. Even assuming he did raise some or all of the claims raised herein, however, he discontinued both appeals before a decision was rendered, thereby " deny[ing] the Commonwealth 'an opportunity to act on his claims before he present[ed] those claims to a federal court in a habeas petition.'" *Cristin v. Brennan*, 281 F.3d 404, 411 (3d Cir. 2002) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)). Moreover, although Hinkley raised some of his federal claims in the mandamus action, he did not appeal the dismissal of his mandamus petition to the Pennsylvania Supreme Court.[7] Because Hinkley failed to present his federal claims to the Pennsylvania appellate courts, his claims are not exhausted. Moreover, because the time to do so has long since passed, the claims are procedurally defaulted. *See Cristin*, 281 F.3d at 410-11 & n.7 (holding petitioner procedurally defaulted claims by failing to take a direct appeal from his conviction or from the rejection of his PCRA petition); *Wyatt*, 2010 WL 760405, at *7 (holding petitioner procedurally defaulted sentencing credit claim by failing to appeal the Commonwealth Court's rejection of the claim to the Pennsylvania Supreme Court).

A district court may review the merits of a procedurally defaulted claim only if the petitioner

---

[7] Although "[a] petitioner typically only needs to present a claim to the Pennsylvania Superior Court to have exhausted the claim," a petitioner who raises a sentencing credit claim in the Commonwealth Court, as to which the Commonwealth Court acts as a court of original jurisdiction, must exercise his right of automatic appeal to the Pennsylvania Supreme Court to properly exhaust the claim. *Wyatt v. DiGuglielmo*, No. 08-614, 2010 WL 760405, at *6-7 (E.D. Pa. Mar. 4, 2010).

"show[s] 'cause and prejudice' for the procedural default or that a 'miscarriage of justice' will occur absent review." *Hubbard v. Pinchak*, 378 F.3d 333, 338 (3d Cir. 2004). To establish cause, a petitioner must "show that some objective factor external to [him] impeded [his] efforts to comply with the State's procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show prejudice, the petitioner must demonstrate the error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Crocker v. Klem*, 450 F. App'x 136, 138 (3d Cir. 2011) (quoting *Murray*, 477 U.S. at 494). With respect to the miscarriage of justice exception, "[a]n allegation of 'actual innocence,' if credible is one such 'miscarriage of justice' that enables courts to hear the merits of the habeas claim." *Hubbard*, 378 F.3d at 338. However, to rely on this exception, a petitioner must (1) "support his allegations of constitutional error with 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial,'" *id.* at 339-40 (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)), and (2) "show it is more likely than not that no reasonable juror would have convicted him in light of the new evidence presented in his habeas petition," *id.* at 339 (quoting *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (internal quotation marks and further citation omitted)).

In his objections to the R&R, Hinkley cites his abandonment by counsel during his appeals in Case No. 1209/2004. While attorney negligence generally does not qualify as cause for a procedural default, a petitioner may establish cause by showing his attorney abandoned him without notice and thereby occasioned the default. *Mapes v. Thomas*, 132 S. Ct. 912, 922-24 (2012). The record in this case supports Hinkley's claim his attorney abandoned him during the pendency of his

13

PCRA appeal. Indeed, after Hinkley's counsel failed to file an appellate brief, the Superior Court remanded the case to the trial court for a determination regarding abandonment, and, following a hearing, the trial court found Hinkley had been abandoned. *See* Pet'r's Pet. for Leave to Amend Ex. 51, ECF No. 59-1 at 47-50. The attorney's abandonment, however, did not result in dismissal of Hinkley's appeal. Rather, Hinkley elected, and was permitted, to pursue the appeal pro se in lieu of accepting the trial court's offer to immediately appoint a new attorney to represent him. *See id.* Moreover, Hinkley in fact continued to pursue the appeal for several months before withdrawing it. In these circumstances, counsel's abandonment of Hinkley cannot be regarded as having occasioned the default and is therefore insufficient to establish cause for the default.[8] *Cf. Mapes*, 132 S. Ct. at 927 (holding petitioner had established cause for a procedural default where his attorneys abandoned him without notice while his state post-conviction petition was pending, thereby preventing him from receiving notification his petition had been denied until after the time to appeal had expired).

Hinkley also suggests he had "no reason to appeal" the dismissal of his mandamus petition because, in denying relief, the Commonwealth Court expressed the view the sentencing courts' orders did not indicate Hinkley "was to be credited for time he was detained for probation violations," and went on to state, "[i]f [Hinkley] believed he was entitled to such credit his remedy was with the sentencing court." *See* Pet'r's Extended Objections 3, ECF No. 39 at 3. While Hinkley may have heeded the Commonwealth Court's suggestion by pursuing relief in the sentencing court, nothing in the Commonwealth Court's ruling affirmatively impeded Hinkley's ability to also pursue an appeal, and the ruling thus does not constitute cause for Hinkley's procedural default.

---

[8] Hinkley also appears to have sought and obtained permission to proceed pro se on direct appeal in Case No. 1209/2004, which he did for several months before discontinuing the appeal.

Finally, citing the United States Supreme Court's recent decision in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), Hinkley argues his PCRA counsel's ineffectiveness is cause for his procedural default. In *Martinez*, the Supreme Court held:

> [w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

132 S. Ct. at 1320. In so holding, the Court recognized a "narrow exception" to the general rule that attorney errors in collateral proceedings do not establish cause for a procedural default. *Id.* at 1315. This exception applies only to claims of ineffective assistance at trial which would otherwise be defaulted due to attorney ineffectiveness in an "initial-review collateral proceeding," i.e., a collateral proceeding "which provide[s] the first occasion to raise a claim of ineffective assistance at trial." *Id.*[9] In addition, "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S. Ct. at 1318.

Although Hinkley appears to argue his PCRA counsel's ineffectiveness is cause for "ANY and ALL procedural default," Pet'r's Pet. for Leave to Amend 2, ECF No. 52 at 2, under *Martinez*, PCRA counsel's ineffectiveness could be cause only for Hinkley's default of his claim his trial counsel was ineffective. Hinkley's ineffective assistance of trial counsel claim, insofar as it relates to Case No. 1209/2004, appears to challenge his counsel's failure to object to the escape charge on

---

[9] As Hinkley notes, in Pennsylvania, a petitioner generally may not raise a claim of ineffective assistance of trial counsel until collateral review. *Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002) (holding "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review").

the ground that the underlying parole revocation/work release sentence was void because his parole had already expired. *See* Pet. for Writ of Habeas Corpus 8, ECF No. 1. While Hinkley's PCRA counsel pursued allegations of ineffective assistance of trial counsel in the PCRA proceedings in Case No. 1209/2004, counsel does not appear to have challenged Hinkley's trial counsel's failure to object to the legality of the underlying detention from which Hinkley escaped. *See* Pet'r's Pet. for Leave to Amend Ex. 44, ECF No. 59-1 at 36-38. Under Pennsylvania law, however, the illegality of the detention is not a defense to escape. *See* 18 Pa. Cons. Stat. Ann. § 5121(c) (providing "[i]rregularity in bringing about or maintaining detention, or lack of jurisdiction of the committing or detaining authority, shall not be a defense to prosecution under [the escape statute]"); *Commonwealth v. Stanley*, 446 A.2d 583, 589 (Pa. 1982) (holding escape statute forecloses defenses based on legal irregularity in detention); *Commonwealth v. Nardi*, 138 A.2d 140, 142 (Pa. Super. Ct. 1958) ("Even though one be confined under a commitment which would be reversed or set aside on appeal, or writ of habeas corpus, nevertheless, if he 'breaks' the institution he is guilty of prison breach."). Consequently, Hinkley's trial counsel was not ineffective for failing to raise such a defense, and his PCRA counsel was not ineffective for failing to raise this ineffectiveness claim on collateral review. Because Hinkley's underlying claim of ineffective assistance of trial counsel is not a substantial one, his PCRA counsel's failure to raise this claim on collateral review does not establish cause for Hinkley's procedural default under *Martinez*.

Hinkley also has not shown failure to review his federal habeas petition as it relates to Case No. 1209/2004 would result in a miscarriage of justice, as he has not demonstrated he is actually innocent of the escape charge. Because Hinkley has not established cause for his procedural default of his federal claims relating to Case No. 1209/2004—under *Martinez* or otherwise—or a

16

miscarriage of justice, the claims will be dismissed as procedurally defaulted.

For the reasons set forth above, this Court concludes Hinkley's federal habeas petition is time barred insofar as it challenges the judgment of sentence in Case Nos. 2967/1990 and 1689/1992. Although the petition is arguably timely with respect to the judgment in Case No. 1209/2004, Hinkley's claims are procedurally defaulted. Accordingly, the petition will be dismissed with prejudice. An appropriate order follows.

BY THE COURT:

   /s/ Juan R. Sánchez
Juan R. Sánchez, J.